IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

United States of America

v.

CHARLES ANTHONY ASMER,

Defendant.

Cr. No. 3:16-423-CMC

**OPINION and ORDER**

Charles Anthony Asmer (Asmer) seeks relief pursuant to 28 U.S.C. § 2255, claiming his guilty plea and conviction under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for being a felon in possession of a firearm and ammunition are invalid under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and therefore, should be vacated.  ECF No. 64.  The Government filed a motion for summary judgment in response.  ECF No. 75.  Asmer filed a reply.  ECF No. 83.  This matter is ripe for resolution.

I. **Procedural Background**

On June 7, 2016, a federal grand jury indicted Asmer on three different counts.  ECF No. 3.  Count 1 charged him with possession with intent to distribute and distribution of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B).  Count 2, the sole count at issue in Asmer's instant § 2255 Motion, charged him with being a felon in possession of a firearm and ammunition, specifically charging:

> That on or about October 15, 2015, in the District of South Carolina, the Defendant, CHARLES ANTHONY ASMER, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce firearms and ammunition, that is a Ruger LCP .380 caliber handgun, a SCCY model CPX-1 9mm handgun, .380 and 9mm caliber

ammunition, all of which had been shipped and transported in interstate and foreign commerce;

In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

ECF No. 3 at 2. Count 3 charged Asmer with carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

On January 18, 2017, Asmer entered into a plea agreement ("the Plea Agreement") with the Government to plead guilty to Counts 1 and 2.[1] ECF No. 44. That same day, Asmer pled guilty to Counts 1 and 2, pursuant to the Plea Agreement. ECF No. 47. The district court dismissed Count 3 on the Government's motion. ECF No. 60 at 1. During the plea colloquy on Count 2 at Asmer's guilty plea hearing, the district court followed then current law and did not advise him that knowledge he had been convicted of a crime punishable by imprisonment exceeding one year was an element of the offense. *See United States v. Langley*, 62 F.3d 602, 604-08 (4th 1995) (*en banc*) (holding defendant's knowledge of his felony status is not an essential element of offense under §§ 922(g)(1) and 924(a)(2), and thus rejecting defendant's challenge to his conviction on basis district court erred in failing to instruct jury Government must prove his knowledge of his felony status is essential element of offense), *abrogated by Rehaif*, 139 S. Ct. at 2191.

-----

[1] The Plea Agreement contained language whereby Asmer waived his rights to pursue an appeal or file a motion under 28 U.S.C. § 2255 with limited exceptions. ECF No. 44 at 9-10. The Government does not argue this waiver applies or seek to enforce it in any way. Therefore, this court will not address the matter further. *See United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012) (declining to enforce *sua sponte* an appeal waiver in a plea agreement because the Government did not seek to enforce it).

A Pre-Sentence Report ("the PSR") set forth all information necessary to calculate Asmer's advisory sentencing range under the United States Sentencing Guidelines ("USSG" or "the Guidelines").  The PSR concluded Asmer's criminal history qualified him for application of the Career Offender enhancement under USSG § 4B1.1, which resulted in an offense level of 37 and a criminal history category of VI.  ECF No. 59 at ¶¶ 38, 65.  With a three-point decrease for acceptance of responsibility, Asmer's total offense level under the Guidelines was 34.  *Id.* at ¶ 68.

With respect to Asmer's criminal history, the PSR reported, *inter alia*, he had:  (1) a 2004 South Carolina state court conviction for financial transaction card fraud, for which he received a sentence of five years imprisonment suspended on three years probation, *id.* at ¶ 27; (2) a 2011 South Carolina state court conviction for manufacturing methamphetamine, for which he was sentenced to twelve years imprisonment suspended upon the service of nine months imprisonment and two years probation, *id.* at ¶ 32; and (3) a 2012 South Carolina state court conviction for strong arm robbery, for which he was sentenced to seven years imprisonment, serving two years and nine months of such sentence before being released to participate in a supervised reentry program, *id.* at ¶ 33.  For Guidelines purposes, the PSR considered Asmer's conviction for manufacturing methamphetamine to be a "'controlled substance offense,'" *id.* at ¶ 32, and his conviction for strong arm robbery to be a "'crime of violence,'" *id.* at ¶ 33.

When combined, Asmer's criminal history category of VI and his offense level of 34 resulted in an advisory sentencing range under the Guidelines of 262 to 327 months imprisonment. *Id.* at ¶ 85.  Asmer made no objections to the PSR.  ECF No. 59-2.

On April 26, 2017, Asmer appeared for sentencing.  He moved to depart downward from his advisory sentencing range; a motion the district court granted.  ECF Nos. 56, 58.  The court

3

sentenced Asmer to 180 months imprisonment on Count 1 and 120 months imprisonment on Count 2, both sentences to run concurrently. ECF No. 60. The district court also sentenced Asmer to eight years supervised release on Count 1 and three years supervised release on Count 2, also to run concurrently. *Id.* Asmer did not file a direct appeal.

On June 3, 2020, Asmer filed the instant motion, pursuant to 28 U.S.C. § 2255, raising the sole claim his guilty plea and conviction on Count 2 for violating §§ 922(g)(1) and 924(a)(2) are invalid under *Rehaif*, 139 S. Ct. at 2191, and therefore, should be vacated. ECF No. 64.

The Government concedes Asmer's motion is timely because he filed it within one year of the Supreme Court's issuance of its decision in *Rehaif*. The Government also "accepts that *Rehaif* is retroactive on collateral review," on the basis that the decision "narrowed the 'class of persons the law punishes.'" ECF No. 75 at 3 (quoting *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016)).

In this action pursuant to § 2255, Asmer bears the burden of proving his grounds for collaterally attacking his guilty plea and conviction by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

## II.  **Defendant's *Rehaif* Claim**

In *Rehaif*, the Supreme Court held in order to sustain a conviction under 18 U.S.C. §§ 922(g) and 924(a)(2), "the Government must prove both that the defendant possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. Asmer argues his guilty plea and conviction on Count 2 is invalid because prior to pleading guilty to Count 2, the district court failed to inform him, in a prosecution under §§ 922(g)(1) and 924(a)(2), the Government must prove he knew he had been

4

convicted of a crime punishable by imprisonment for a term exceeding one year. [2]  ECF Nos. 64

at 5 and 83 at 2.  In other words, Asmer argues, the district court's failure to advise him of all

elements of his offense rendered his guilty plea and conviction constitutionally infirm, thereby

necessitating returning him to the same position he would have been in absent the error.  According

to Asmer, returning him to the same position he would have been in absent the error requires the

court to vacate his guilty plea to Count 2 and his resulting conviction.  Then, he "can decide

whether to plead anew or go to trial."  ECF No. 83 at 10.

　　　The Government moved for summary judgment in its favor on the following grounds:  (1)

Asmer procedurally defaulted his *Rehaif* claim by failing to raise it on direct review; and (2) Asmer

cannot demonstrate cause and prejudice or actual innocence to excuse his procedural default.  ECF

No. 75 at 1.  On collateral review, a defendant's procedural default may be excused, thus allowing

the court's consideration of his claim on the merits, if the defendant can show either cause for the

---

[2] Notably, Asmer does not argue *Rehaif* **also** requires the Government to prove, as an element of
an offense under §§ 922(g)(1) and 924(a)(2), **he knew the law prohibits** persons who have been
convicted of a crime punishable by a term of imprisonment exceeding one year from possessing a
firearm and ammunition.  This is not surprising.  In *Rehaif*, the Court posed the question to be
answered in the case as follows:  "Does [the word 'knowingly'] mean that the Government must
prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a
firearm) and also that he fell within the relevant status (**that he was a felon**, an alien unlawfully
in this country, or the like)?"  *Rehaif*, 139 S. Ct. at 2194 (emphasis added).  In the sentence
immediately following, the Court answered the question as follows:  "We hold that the word
'knowingly' applies both to the defendant's conduct and to the defendant's status.  To convict a
defendant, the Government therefore must show that the defendant knew he possessed a firearm
**and also that he knew he had the relevant status when he possessed it**."  *Id.* (emphasis added).
*See also id.* at 2205 ("[T]he pointed use of the term 'knowingly,' as opposed to 'willfully,' in §
922(g), provides a ground to infer that Congress did not mean to require knowledge of illegality.")
(Alito, J., dissenting).

default and resulting prejudice or his actual innocence. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998); *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012).

In response, Asmer does not dispute he failed to challenge on direct review the district court's failure to inform him in order to convict him on Count 2 for violating §§ 922(g)(1) and 924(a)(2) the Government would have to prove he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year at the time he possessed the firearms and ammunition on or about October 15, 2015. However, Asmer contends he has not procedurally defaulted his *Rehaif* claim, but even if he has, he can demonstrate cause and prejudice to excuse the default. Asmer makes no claim of his actual innocence with respect to Count 2.

### A. Asmer Procedurally Defaulted his *Rehaif* Claim.

Asmer first makes a passing argument he has not procedurally defaulted his *Rehaif* claim on collateral review regardless of his undisputed failure on direct review to challenge as error the district court's failure to inform him of the felony status element with respect to Count 2, because such error constitutes structural error. In other words, Asmer argues, when a defendant seeks to vindicate a structural error on collateral review which he failed to challenge on direct review, he can never be considered to have procedurally defaulted the claim. While Asmer does not cite a single case directly supporting his argument, he relies on the Fourth Circuit's recent decision in *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), *petition for cert. filed*, 2020 WL 5946608 (October 5, 2020) (No. 20-444), a direct review case, to make the leap.

In *Gary*, the defendant ("Gary") pled guilty to two counts of being a felon in possession of a firearm and ammunition in violation of §§ 922(g)(1) and 924(a)(2) without the district court having previously informed him the Government must prove, with respect to each count, he knew

6

he had been convicted of a crime punishable by imprisonment for a term exceeding one year at the time he possessed the firearm and the ammunition at issue. *Id.* at 199. The district court accepted Gary's guilty plea and sentenced him to 84 months imprisonment on each count, to run concurrently. *Id.* Gary never attempted to withdraw his guilty plea in the district court. *Id.* at 200.

On direct appeal, Gary sought to have his guilty plea and convictions vacated under *Rehaif* on the basis he did not knowingly and intelligently plead guilty because he did not understand the essential elements of the offenses prior to pleading guilty. *Id.* at 198. Because Gary did not attempt to withdraw his guilty plea in the district court, the *Gary* court reviewed Gary's plea challenge pursuant to the familiar plain error standard of review set forth in *United States v. Olano*, 507 U.S. 725 (1993), used for reviewing unpreserved errors. *See also* Fed. R. Crim. P. 52(b). Under the first three prongs of *Olano's* four-prong test, a defendant must show: (1) an error occurred; (2) the error was plain; and (3) the error affected the defendant's substantial rights.[3] *Olano*, 507 U.S. at 732. Only if a defendant satisfies *Olano's* first three prongs, does *Olano's* fourth prong come into play. Under *Olano's* fourth prong, the reviewing court retains the discretion to correct the error only if such error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

The *Gary* court held "a standalone *Rehaif* error satisfies plain error review because such an error is structural, which *per se* affects a defendant's substantial rights." *Gary*, 954 F.3d at 200. As the Supreme Court explained in *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), "the defining

---

[3] On occasion, jurisprudence understandably refers to *Olano's* third prong as "the prejudice prong . . . ." *See*, *e.g.*, *Puckett v. United States*, 556 U.S. 129, 140 (2009).

7

feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Id.* at 1907 (alteration in original) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).

According to *Gary*, the district court's *Rehaif* error in the guilty plea context constitutes structural error on three separate grounds. First, *Gary* held the error is structural because it violated Gary's Sixth Amendment "right to make an *informed* choice on whether to plead guilty or to exercise his right to go to trial," *Gary*, 954 F.3d at 205, and "harm to a defendant is irrelevant to the principles underlying his autonomy right and liberty interests," *id.* at 206. Second, *Gary* held the "error is structural because the deprivation of Gary's autonomy interest under the Fifth Amendment due process clause has consequences that 'are necessarily unquantifiable and indeterminate,'. . . rendering the impact of the district court's error simply too difficult to measure." *Id.* at 206 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006)). Finally, *Gary* held "the error is structural on the ground that fundamental unfairness results when a defendant is convicted of a crime based on a constitutionally invalid guilty plea." *Id.* Ultimately, the court in *Gary* went on to find the error satisfied *Olano's* fourth prong as an error which "seriously affected the fairness, integrity and public reputation of the judicial proceedings." *Id.* at 208. Therefore, the court exercised its discretion to correct the error. *Id.* at 208.

In the instant § 2255 Motion, Asmer seeks to use the *per se* prejudice holding of *Gary* in the direct review context to leap to the conclusion a defendant who claims structural error in the collateral review context, but who nonetheless failed to raise such a claim on direct review, can never be found to have procedurally defaulted his claim. According to Asmer, [t]his lack of structural integrity is . . . why [he] has not procedurally defaulted his claim." ECF No. 83 at 2.

8

Unfortunately for Asmer, nothing in *Gary* suggests such a leap and the Supreme Court's decision in *Bousley v. United States*, 523 U.S. 614 (1998) precludes it. *Bousley*, 523 U.S. at 621 (stating, "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"). As relevant here, in *Bousley*, the Supreme Court held a defendant who failed to challenge on direct review the constitutional validity of his guilty plea to a federal offense on the basis the district misinformed him about the elements of the offense procedurally defaulted the claim on collateral review such that the defendant could only raise it on collateral review if he established cause and actual prejudice, or his actual innocence.[4] *Id.* at 621-22. In reaching this holding, the Court stressed it has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review"; "habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal,'" (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)); and "'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas,'" (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). *Id.* at 621. Moreover, the Court rejected Bousley's argument his claim fell "within an exception to the procedural default rule for claims that could not be presented without further factual development." *Id.* The Court had previously held such an exception applied where a Government agent coerced the defendant to plead guilty by threats

---

[4] Factually, the defendant in *Bousley* sought collateral relief from his conviction for "using" a firearm "during and in relation to a drug trafficking crime," 18 U.S.C. § 924(c)(1), on the ground prior to his pleading guilty to such offense, the district court failed to inform him § 924(c)(1)'s "use" prong required the Government to prove "active employment of the firearm," *Bailey v. United States*, 516 U.S. 137, 144 (1995) (holding to sustain a conviction under § 924(c)(1)'s "use" prong," Government must show defendant actively employed firearm during and in relation to predicate crime).

9

"when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'" *Id.* at 622 (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (*per curiam*)). The Court declared Bousley's claim (*i.e.*, the district court misinforming him about an essential element of the offense prior to his guilty plea) "differ[ed] significantly" as Bousley was "not arguing that his guilty plea was involuntary because it was coerced, but rather that it was not intelligent because the information provided him by the District Court at his plea colloquy was erroneous." *Id.* "This type of claim," the Court expounded, "can be fully and completely addressed on direct review based on the record created at the plea colloquy." [5] *Id.*

As relevant here, the take-away from *Bousley* is when a defendant fails to challenge as unknowing and unintelligent his guilty plea on direct review, he may raise it on collateral review in a §2255 Motion only if he can first demonstrate either cause and prejudice or his actual innocence. *Id.* at 621-22. *See also Cherry v. United States*, 2020 WL 6480921 at *1 (E.D. Va. Nov. 4, 2020) (citing *Bousley* in support of holding defendant who failed to allege *Rehaif* error on direct review from his guilty plea to one count of violating §§ 922(g)(1) and 924(a)(2) procedurally defaulted *Rehaif* claim on § 2255 Motion).

**B. Asmer Has Not Demonstrated Cause.**

Having concluded Asmer procedurally defaulted his *Rehaif* claim on collateral review, the court now turns to consider whether Asmer can demonstrate cause for failing to raise such a claim

---

[5] The Court in *Bousley* concluded the defendant could not establish "cause," and therefore did not analyze the actual prejudice prong. *Bousley*, 523 U.S. at 623. The Court then went on to reverse the lower court's decision and remand the case to allow the defendant to attempt to make a showing of actual innocence, *i.e.*, to demonstrate he did not use a firearm as that term is defined in *Bailey*. *Id.* at 623-24.

on direct review. Asmer contends he demonstrates cause because the monumental change in the law effected by *Rehaif* regarding the elements the Government must prove to sustain a conviction under §§ 922(g) and 924(a)(2) created a claim so novel its legal basis was not reasonably available to his counsel at the time he entered his guilty plea on January 18, 2017. The novelty arises, Asmer posits, from the situation created by *Rehaif* overturning a longstanding and widespread practice to which the Supreme Court had not previously spoken, but which all ten federal appellate courts to have addressed the issue post Congress' addition of the *mens rea* requirement to a § 922(g) prosecution in 1986, but pre-*Rehaif*, unanimously held a defendant's knowledge of his status as a person falling into one of the nine categories of persons prohibited from possessing firearms and ammunition **is not** an element of an offense under §§ 922(g) and 924(a)(2). *See Rehaif*, 139 S. Ct. at 2210 (Alito, J., dissenting) (observing after Congress added *mens rea* requirement to a § 922(g) prosecution in 1986, all ten courts of appeals to have addressed issue held *mens rea* requirement does not apply to a defendant's status); *id.* at 2210 n.6 (Alito, J. dissenting) (collecting cases from 1st, 3d, 4th, 5th, 7th, 8th, 9th, 10th, 11th, and D.C. Circuits). According to Asmer, this situation qualifies as one of the three situations the Supreme Court identified in *Reed v. Ross*, 468 U.S. 1 (1984) in which a constitutional claim is so novel its legal basis was not reasonably available to counsel, thus demonstrating cause for failing to raise the claim on direct review. *Reed*, 468 U.S. at 17. That situation is when the Supreme Court renders a decision announcing a new constitutional rule that "'overtur[n][s] a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has

expressly approved.'"[6] *Id.* (first alteration in original) (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)).

The Government contends Asmer has not shown cause because his novelty argument is incompatible with both the Supreme Court's decision in *Bousley* and the Fourth Circuit's decision in *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001). ECF No. 75 at 5. The court addresses each of these cases in turn.

Five years prior to the Supreme Court's decision in *Bailey*, holding § 924(c)(1)'s "use" prong requires the Government to show "active employment of a firearm," *Bailey*, 516 U.S. at 144, the habeas petitioner in *Bousley* had pleaded guilty to knowingly and intentionally using firearms during and in relation to a drug trafficking crime in violation of § 924(c)(1). *Bousley*, 523 U.S. at 616. Bousley argued his guilty plea was not knowing or intelligent because the district court misinformed him about the elements of a § 924(c)(1) offense (*i.e.*, misinformed him about the true nature of the charge against him), his claim was not waived by his guilty plea, and his

---

[6] *Reed* involved a constitutional challenge on collateral review by a defendant convicted of first-degree murder under North Carolina state law to the trial court's jury instruction placing the burden of proving lack of malice on the defendant. *Reed*, 469 U.S. at 3. In *Reed*, the Court expressly acknowledged that "[a]lthough the question whether an attorney has a 'reasonable basis upon which to develop a legal theory may arise in a variety of contexts," it "confined [its] attention to the specific situation presented" in the case; "one in which [the Supreme] Court has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application." *Id.* at 17. In contrast to the error at issue in *Reed*, at least two Circuit Courts of Appeals have held *Rehaif* did not announce a new constitutional rule, but only resolved a question of statutory interpretation. *See In re Sampson*, 954 F.3d 159, 161 (3d Cir. 2020) (holding *Rehaif* did not announce a new rule of constitutional law, but instead clarified the statutory elements the Government must prove to sustain a conviction under §§ 922(g) and 924(a)(2)); *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019) (*per curiam*) (same). Asmer does not address this distinction, but given the court's analysis as follows, the point is irrelevant.

conviction therefore should be vacated. *Id.* Bousley sought to demonstrate cause for his procedural default on the grounds of novelty and futility. *Id.* at 622-23. The Court held Bousley could not demonstrate cause based on either novelty of the issue or futility in raising it prior to *Bailey*. *Id.* The Court held novelty did not exist because, at the time of Bousley's plea, "the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession.'" *Id.* at 622. Futility did not exist because "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Id.* at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

In *Sanders*, the Fourth Circuit observed, "[a]lthough the *Bousley* Court recognized its holding in *Bailey* changed the relevant legal landscape, it held that Bousley's claim did not qualify as novel." *Sanders*, 247 F.3d at 145. The *Sanders* court then went on to recognize the *Bousley* "Court reached this conclusion because other defendants had previously challenged their § 924(c)(1) convictions on grounds that 'use' required more than the mere possession of a firearm." *Id. Sanders* involved a defendant ("Sanders") on collateral review who attempted to raise a procedurally defaulted *Apprendi* claim and sought to establish cause to excuse his failure to raise the claim on direct review by arguing "the legal basis for his claim was not reasonably available to his counsel at the time his plea was entered."[7] *Sanders*, 247 F. 3d at 144. The *Sanders* court rejected Sanders' novelty-of-the claim argument, reasoning "[u]nder the *Bousley* analysis, Sanders simply cannot show cause to explain his failure to raise his *Apprendi* argument on direct appeal."

---

[7] In *Apprendi v. New Jersey*, the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000).

*Id.* The *Sanders* court reached this result despite, "prior to *Apprendi*, every federal circuit court considered drug quantity to be a sentencing factor for a judge to determine based on a preponderance of the evidence." *Id.* at 147 (citing as examples, *United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir. 1990) and *United States v. Powell*, 886 F.2d 81, 85 (4th Cir. 1989)). Significant to the *Sanders* court and of relevance here, other defendants had been making *Apprendi*-type arguments ever since the Sentencing Guidelines had come into existence. *Id.* at 145. The unlikelihood the court in Sanders' pre-*Apprendi* case on direct review would have accepted an *Apprendi*-like argument did not establish cause, the *Sanders* court reasoned, because "Sanders plainly had at his disposal the essential legal tools with which to construct his claim." *Id.* at 146.

In response, Asmer attempts to distinguish *Bousley* on its facts, but does not address *Sanders* at all. According to Asmer, *Bousley* is distinguishable from his case because in contrast to the settled legal landscape at the circuit court level pre-*Rehaif* on the issue of whether knowledge of a defendant's status as a person falling within one of the categories in § 922(g) is an element in a prosecution under §§ 922(g) and 924(a)(2), the precedent preceding *Bailey* (the error at issue in *Bousley*) at the circuit court level "was a mess of disagreement." ECF No. 83 at 4. *See also Bailey*, 516 U.S. at 142 (recognizing the meaning of "use" in "§ 924(c) has been the source of much perplexity in the courts" and observing "[t]he Circuits are in conflict both in the standards they have articulated . . . and in the results they have reached . . .").

Having considered the parties' arguments on cause, the court is persuaded the Government is correct. Asmer has not demonstrated cause to excuse his failure to raise his *Rehaif* claim on direct review. Asmer's attempt to materially distinguish *Bousley* simply cannot succeed in the

face of *Sanders*.  *Sanders* is on all fours with Asmer's situation.  Like the legal landscape in *Sanders*, the federal circuit courts were in complete agreement on the law prior to the Supreme Court case creating Asmer's claim and other defendants had been making arguments along similar lines prior to that time.  *See*, *e.g.*, *United States v. Reap*, 391 F. App'x 99, 103-04 (2d Cir. 2010) (rejecting under plain error standard defendant's challenge to validity of his guilty plea to being a felon in possession of a firearm under §§ 922(g)(1) and 924(a)(2) based upon his denial of having knowledge of his felony status, which knowledge defendant argued was a necessary element of such offense); *Langley*, 62 F.3d at 604-08 (holding defendant's knowledge of his felony status is not an essential element of offense under §§ 922(g)(1) and 924(a)(2), and thus rejecting defendant's challenge to his conviction on such offense on basis district court erred in failing to instruct jury Government must prove his knowledge of his felony status is essential element of offense); *United States v. Bryant*, 2020 WL 353424 at *3 (E.D.N.Y. Jan. 21, 2020) (issue decided in *Rehaif* had been "percolating in the courts for years . . .") (collecting cases).  *But see Merritt v. United States*, 2020 WL 6568315 at *5 (E.D. Va. Nov. 9, 2020) (finding "defendants had not been making *Rehaif*-like claims to challenge § 922(g)'s knowing requirement prior to *Rehaif* because the claim was not available to counsel or defendants").  In conclusion, in accord with the plethora of other courts to have addressed the same issue, Asmer has not demonstrated cause for his default of his *Rehaif* claim.  *See Wilson v. United States*, 2020 WL 49500930 at *8 (W.D.N.C. Aug. 24, 2020) (holding in context of § 2255 motion defendant could not demonstrate cause for failure to raise *Rehaif*-type claim on direct review), *appeal docketed*, No. 20-7436 (4th Cir. Sep. 28, 2020); *United States v. Battle*, 2020 WL 4925678 at *5-6 (W.D. Penn. Aug. 21, 2020) (same), *appeal docketed*, No. 20-2726 (3d Cir. Aug. 25, 2020); *United States v. Vasquez-Ahumada*, 2020 WL

3213397 at *3 (W.D. Va. June 15, 2020) (same); *United States v. Mayo*, 2020 WL 2476167 at *2 (W.D. Va. May 13, 2020) (same); *Bryant*, 2020 WL 353424 at *2-3 (same). *But see Merritt,* 2020 WL 6568315 at *5 (holding in context of § 2255 motion defendant demonstrated cause for failure to raise *Rehaif*-type claim on direct review).

### C. Asmer Has Not Demonstrated Prejudice.

Because Asmer failed to demonstrate cause, he cannot avoid the procedural bar to the court considering his *Rehaif* claim on the merits in the instant § 2255 motion. Accordingly, the court need not proceed to analyze the prejudice prong of a cause and prejudice analysis. However, for the sake of thoroughness, the court will proceed to consider whether, assuming *arguendo* Asmer demonstrated cause, he can demonstrate prejudice, which requires a showing of actual prejudice. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). To show actual prejudice on collateral review, a defendant must "demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)).

### 1. Actual Prejudice Is Not Presumed Here.

Asmer argues he "does not need to establish actual prejudice because of the presumed prejudice inherent in a structural error that results in a fundamentally unfair outcome." ECF No. 83 at 5. Asmer then seizes on *Gary*'s holding that *Rehaif* error in the guilty plea context "is structural error on the ground that fundamental unfairness results when a defendant is convicted of a crime based on a constitutionally invalid guilty plea." *Gary*, 954 F.3d at 206.

The Government opposes Asmer's presumed-prejudice argument on essentially two grounds. First, the Government points out the obvious difference in the procedural posture of a

16

*Rehaif* claim raised on direct review as in *Gary* and a procedurally defaulted *Rehaif* claim raised on collateral review as here, an entirely different procedural world where the Supreme Court has long held a "prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166.  Second, the Government relies by analogy on *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2012), holding a defendant who did not preserve a structural error–courtroom closure–on direct review but later raised it on collateral review in the context of an ineffective assistance of counsel claim still bore the burden of proving the prejudice prong of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 687 (1984); the prejudice inquiry remained unaltered.  *Id.* at 1905, 1913.

The opposing positions tee up the following issue: When, on collateral review, a defendant raises a procedurally defaulted claim of structural error occasioned by the district court's failure to inform him of an essential element of the offense at issue prior to his pleading guilty to such offense, is prejudice automatically presumed or does the defendant still need to demonstrate the error worked to his actual and substantial disadvantage in order to satisfy the prejudice prong in a cause and prejudice analysis?  For the following reasons, the court holds the defendant must still demonstrate the error worked to his actual and substantial disadvantage.  Accordingly, the court holds for Asmer to satisfy the prejudice prong of a cause and prejudice analysis on collateral review with respect to Count 2, Asmer must demonstrate the district court's failure to advise him prior to his pleading guilty to Count 2 that knowledge of his felony status at the time he possessed the firearms and ammunition on or about October 15, 2015 is an element of the offense worked to his actual and substantial disadvantage.

17

Neither the Supreme Court nor the Fourth Circuit has directly spoken on the issue of whether a defendant challenging his guilty plea and conviction on collateral review on the ground the district court failed to advise him of an essential element of the offense prior to his guilty plea is relieved of his burden to establish actual prejudice in a cause and prejudice analysis. Nonetheless, the guidance the Supreme Court has provided in this area counsels strongly in favor of the Government's position.

First, the Supreme Court indirectly addressed the issue in favor of still requiring the defendant to demonstrate actual prejudice, when, in *Bousley*, it held Bousley–also alleging his guilty plea was unknowing and unintelligent based upon the district court's misinforming him as to the essential elements of the offense at the plea hearing–must demonstrate cause and actual prejudice to excuse his procedural default. *Id.* at 622. Although the Court never reached the prejudice prong considering Bousley's failure to demonstrate cause, nothing in *Bousley* suggests Bousley would be home free on the prejudice prong if he had only demonstrated cause. Indeed, the majority in *Bousley* never contemplated the defendant being relieved of the burden of establishing actual prejudice despite the fact Justice Stevens in his dissenting opinion in *Bousley* observed "[t]he Court has never held that the constitutionality of a guilty plea cannot be attacked collaterally unless it is first challenged on direct review." *Bousley*, 523 U.S. at 629 (Stevens, J., dissenting). Justice Stevens then went on to explain why he would find no procedural default and remand with instructions to vacate Bousley's § 924(c) conviction and allow him to plead anew:

> Moreover, as the facts of this case demonstrate, such a holding would be unwise and would defeat the very purpose of collateral review. A layman who justifiably relied on incorrect advice from the court and counsel in deciding to plead guilty to a crime that he did not commit will ordinarily continue to assume that such advice was accurate during the time for taking an appeal. The injustice of his conviction

18

is not mitigated by the passage of time.  His plea should be treated as a nullity and the conviction based on such a plea should be voided.

*Id.* at 629.  The upshot of considering the majority opinion in *Bousley* in light of this contrary position by Justice Stevens is the strong sense the reasonable extension of *Bousley* calls for the court to reject Asmer's argument he is relieved of showing actual prejudice under a cause and prejudice analysis on collateral review solely because prejudice is presumed for guilty-plea defendants who allege a *Rehaif* error on direct review.

Second, the Court's more recent decision in *Weaver* builds upon the *Bousley* Court's distinction between the routine remedy of direct review and the extraordinary remedy of collateral review and suggests the error Asmer alleges must have worked to his actual and substantial disadvantage not a hypothetical one.  In the context of a violation of the right to a public trial, the *Weaver* Court addressed whether the prejudice inquiry in an ineffective assistance of counsel claim on collateral review is altered when the error, alleged for the first time on collateral review, is structural.  *Weaver*, 137 U.S. at 1905.  The Court held the defendant must still demonstrate prejudice to secure a new trial.  *Id.* at 1912.  In reaching this holding, the Court surveyed its structural error jurisprudence.  *Id.* at 1907-12.  As part of its survey, the Court stressed "[d]espite its name, the term 'structural error' carries with it no talismanic significance as a doctrinal matter" and "means only that the government is not entitled to deprive the defendant of a new trial by showing the error was 'harmless beyond a reasonable doubt."  *Id.* at 1910 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).  The *Weaver* Court then went on to reason:

When an ineffective-assistance-of-counsel claim is raised in postconviction proceedings, the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases.  The finality interest is more at risk, . . . and direct review often has given at least one opportunity for an appellate review of trial

19

proceedings. These differences justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel.

*Weaver,* 137 U.S. at 1912 (internal citation omitted).

With respect to the impact of *Weaver* on the issue here, the court is informed by the Sixth Circuit's recent reading of *Weaver* as

> stand[ing] for the idea that finality and judicial economy can trump even structural error; so, when a defendant raises a structural error on collateral review rather than on direct review, he must prove actual prejudice, even though he would not have had to prove actual prejudice if he had raised it on direct review. That is because, if the error is one that results in fundamental unfairness (e.g., denial of counsel, no reasonable-doubt instruction, biased judge), actual prejudice should be easy to show and when a defendant raises the error immediately to the trial court, the court can correct the mistake; or, when it is raised on direct review, only minimal time will have passed, so witnesses and evidence are still available. But when the error is raised on collateral review, it is a larger burden on the system and on the concept of fairness.

*Parks v. Chapman*, 815 F. App'x. 937, 944 (6th Cir. 2020).

The court is mindful the Fourth Circuit's opinion in *Gary* "independently f[ou]nd" *Rehaif* "error is structural on the ground that fundamental unfairness results when a defendant is convicted of a crime based on a constitutionally invalid guilty plea." *Gary*, 954 F.3d at 206. However, because relief from a conviction on "habeas review is an extraordinary remedy," *Bousley*, 523 U.S. at 621, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas," *United States v. Timmreck*, 441 U.S. 780, 784 (1979), and the Supreme Court's decisions in *Bousley* and *Weaver* counsel against relieving Asmer of his burden of demonstrating actual prejudice under a cause and prejudice analysis to excuse his procedural default, the court rejects Asmer's argument he does not need to establish he was actually prejudiced by the *Rehaif* error at his guilty plea hearing. The court holds he does. *See*

20

*Merritt,* 2020 WL 6568315 at *5 (on a § 2255 Motion, relying on procedural context between direct review and collateral review to hold defendant must demonstrate actual prejudice resulting from *Rehaif* error in a cause and prejudice analysis despite Fourth Circuit's holding in *Gary* on direct review that *Rehaif* error is structural error resulting in presumed prejudice without case-specific showing of prejudice); *Cherry*, 2020 WL 6480921 at *2 n.2 (same).

### 2. Asmer Has Not Demonstrated Actual Prejudice.

To show actual prejudice on collateral review, Asmer must demonstrate the *Rehaif* "error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher*, 126 F.3d at 572 (quoting *Murray*, 477 U.S. at 494). Unsurprisingly, Asmer does not even attempt to demonstrate the *Rehaif* error worked to his actual and substantial disadvantage. Indeed, he makes no assertion to the effect but for the *Rehaif* error, he would not have pled guilty to Count 2, but would have elected instead to go to trial on that count. *Cf. Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) ("when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) . He also makes no assertion to the effect had he gone to trial, the jury would likely not have convicted him on Count 2. *See generally id.* at 1966 ("As a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea.").

The lack of any such by assertions by Asmer makes complete sense given the record contains abundant evidence Asmer knew he had previously been convicted of a crime punishable

21

by a term of imprisonment exceeding one year at the time he possessed the firearms and ammunition on or about October 15, 2015, as alleged in the indictment. As set forth earlier in this Opinion and Order, *supra* at 3, the PSR's criminal history section, to which Asmer raised no objections, sets forth three South Carolina state court convictions for which Asmer was sentenced to terms of imprisonment exceeding one year (five years, twelve years, and seven years, respectively). Moreover, Asmer served two years and nine months of imprisonment of his seven-year sentence for his 2012 South Carolina state court conviction for strong arm robbery. ECF No. 59 at ¶ 33. *See Wilson*, 2020 WL 4950930 at *8 (holding on § 2255 Motion defendant who pled guilty to offense under §§ 922(g)(1) and 924(a)(2) failed to establish actual prejudice resulting from *Rehaif* error given sufficient evidence in record to establish defendant knew of his felony status, namely the PSR set forth multiple convictions for which defendant served twelve or more months in prison and defendant admitted he was guilty of having been previously convicted of at least one crime punishable by imprisonment for a term exceeding one year, and did knowingly and unlawfully possess firearms in and a affecting commerce in violation of 18 U.S.C. § 922(g)(1)); *Floyd v. United States*, 2020 WL 374695 at *3 (N.D. Ill. Jan. 23, 2020) ("inconceivable" defendant was unaware at time he possessed firearm he was a convicted felon because he was sentenced to four years in prison and admitted at Rule 11 hearing he was a convicted felon). Under these circumstances, Asmer has not demonstrated by a preponderance of the evidence he would have rejected the plea had the district court informed him in order to convict him on Count 2 for violating §§ 922(g)(1) and 924(a)(2) the Government would have to prove at trial he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year at the time he possessed the firearms and ammunition on or about October 15, 2015, as alleged in the indictment.

## III.    Conclusion

For the reasons set forth herein, Asmer's claim in his § 2255 Motion seeking relief from his guilty plea to and conviction on Count 2 of his Indictment fails as a matter of law.  Therefore, the Government's motion for summary judgment is granted in full, and Asmer's § 2255 motion is dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
November 20, 2020